## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Ecolab USA Inc. and Kleancheck Systems, LLC,<br><br>          Plaintiffs,<br><br>v.<br><br>Diversey, Inc.,<br><br>          Defendant. | Case No. 12-CV-1984 (SRN/FLN)<br><br><br>**MEMORANDUM OPINION<br>AND ORDER**<br><br>**[FILED UNDER SEAL]** |

Anthony R. Zeuli, Rachel K. Zimmerman, Eric R. Chad, Annaliese S. Mayer, and Paige S. Stradley, Merchant & Gould P.C., 3200 IDS Center, 80 South Eighth Street, Minneapolis, Minnesota 55402, for Plaintiffs.

Allen A. Arntsen, Naikang Tsao, and Stephan J. Nickels, Foley & Lardner LLP, 150 East Gilman Street, Suite 5000, Madison, Wisconsin 53703, for Defendant.

R. Jan Pirozzolo-Mellowes, Foley & Lardner LLP, 777 East Wisconsin Avenue, Milwaukee, Wisconsin 53202, for Defendant.

Andrew M. Gross, Foley & Lardner LLP, 321 North Clark Street, Suite 2800, Chicago, Illinois 60654, for Defendant.

George W. Soule, Soule & Stull LLC, Eight West 43rd Street, Suite 200, Minneapolis, Minnesota 55409, for Defendant.

SUSAN RICHARD NELSON, United States District Judge

## I.    INTRODUCTION

This matter is before the Court on Plaintiffs' Motion to Preclude Testimony of Defendant's Expert, Richard M. Lueptow [Doc. No. 144]; Plaintiffs' Motion to Preclude Testimony of Defendant's Expert, William A. Rutala, Ph.D [Doc. No. 150]; and

Plaintiffs' Motion to Preclude Testimony of Defendant's Damages Expert, John C. Jarosz [Doc. No. 156].  For the reasons that follow, the Court grants Plaintiffs' Motions as they relate to Dr. Lueptow and Dr. Rutala, and the Court denies Plaintiffs' Motion regarding Mr. Jarosz.[1]

## II.   BACKGROUND

### A.   The Patents-in-Suit and the Allegedly Infringing Product

This litigation involves allegations by Plaintiffs Ecolab USA Inc. and Kleancheck Systems, LLC, that Defendant Diversey, Inc., is infringing, contributing to the infringement of, and/or inducing the infringement of, U.S. Patent No. 7,718,395 B2 (the "'395 Patent") and U.S. Patent No. 7,780,453 B2 (the "'453 Patent").  (Compl. ¶¶ 10, 26 [Doc. No. 1].)  The '395 Patent, entitled "Monitoring Cleaning of Surfaces," issued on May 18, 2010.  (Id., Ex. A ('395 Patent).)  The '453 Patent, also entitled "Monitoring Cleaning of Surfaces," issued on August 24, 2010.  (Id., Ex. B ('453 Patent).)  The Abstract of both Patents reads:

> A method for monitoring cleaning of a surface includes applying an amount of transparent indicator material to an area of a surface and measuring the amount of transparent indicator material remaining on the surface.  The transparent indicator material may be fixed on the surface by drying and, when a fluorescent material, may be measured through exposure to ultraviolet radiation.

---

[1]     Defendant argues that Plaintiffs' failure to file a meet-and-confer statement in regard to each of these Motions, as required by District of Minnesota Local Rule 7.1, is an independent basis for denying the Motions.  (See Def.'s Mem. of Law in Opp. to Pls.' Mot. to Preclude Testimony of Def.'s Expert, Richard M. Lueptow [Doc. No. 173] at 8 n.9; Def.'s Mem. of Law in Opp. to Pls.' Mot. to Preclude Testimony of Def.'s Expert, William A. Rutala, Ph.D [Doc. No. 174] at 1 n.1; Def.'s Mem. of Law in Opp. to Pls.' Mot. to Preclude Testimony of John C. Jarosz [Doc. No. 176] at 6 n.3.)  However, Defendant asserts no prejudice that it has suffered as a result of this failure, and the Court declines to dismiss the Motions.

(<u>Id.</u>, Exs. A ('395 Patent) & B ('453 Patent).)  Claim 1 of the '395 Patent states:

> 1.      A method for determining if a surface has been cleaned, the method comprising:
>
> applying an amount of transparent indicator material to one or more discrete target sites on one or more environmental surfaces, the amount of transparent indicator material being applied to the one or more discrete target sites on the one or more environmental surfaces with a non-contact applicator; and
>
> determining if any of the transparent indicator material remains on the one or more discrete target sites on the one or more environmental surfaces after one or more opportunities to clean the environmental surface by environmental services staff, thereby providing a cleanliness result.

(<u>Id.</u>, Ex. A ('395 Patent) at col. 9, ll. 21–34.)  Similarly, Claim 1 of the '453 Patent reads:

> 1.      A method for evaluating cleaning improvement interventions, the method comprising:
>
> applying a contiguous amount of transparent indicator material to one or more target sites of one or more environmental surfaces, the amount of transparent indicator material being applied to the one or more target sites of the one or more environmental surfaces with a non-contact applicator; and
>
> determining if any of the transparent indicator material remains on the one or more target sites of the one or more environmental surfaces after one or more opportunities to clean the one or more environmental surfaces by environmental services staff, thereby providing a cleanliness result.

(<u>Id.</u>, Ex. B ('453 Patent) at col. 9, ll. 33–45.)

The allegedly infringing product is Defendant's VeriClean Fluorescent Marking Spray ("VeriClean Sprayer").  (<u>See, e.g.</u>, Compl. ¶¶ 10, 26.)  As discussed in the Court's Summary Judgment Order, the VeriClean Sprayer is a pump sprayer that was introduced to

the market in March 2012 as part of a "programmatic evidence-based surface cleaning and disinfection program designed to improve the thoroughness of cleaning and disinfection of high touch surfaces." (Mem. Op. and Order dated Apr. 20, 2015 [Doc. No. 227] ("SJ Order") at 11 (quoting Zimmerman Decl. [Doc. No. 179], Ex. 18 (Diversey VeriClean System Implementation and Support Guide) at 11).)

### B.    Claim Construction

Plaintiffs filed this lawsuit in August 2012.  (See Compl. at 8.)  In August 2013, the parties filed motions for claim construction, requesting that the Court construe the following terms from the Patents-in-Suit:  "non-contact applicator," "transparent," "target site(s)," "discrete" or "discrete target sites," "contiguous amount" or "contiguous amount of transparent indicator material," "cleanliness result," "resists dry abrasion," and "colorless."  (See Joint Claim Construction Statement [Doc. No. 45].)  These terms appear in, for example, claims 1, 23, and 26 of the '395 Patent, and in claims 1 and 23, among others, of the '453 Patent.  After thoroughly reviewing and discussing the claim language, the specifications, and the prosecution history of the Patents-in-Suit, this Court held in its January 23, 2014 Order (the "Claim Construction Order") that:

- "non-contact applicator" is properly construed as "an applicator that does not need to touch the environmental surface in order to apply the transparent indicator material thereon."  (Mem. Op. and Order dated Jan. 23, 2014 [Doc. No. 69] ("Claim Construction Order") at 21.)

- "transparent" is properly construed as "capable of transmitting light so that objects and images beyond can be clearly perceived."  (Id. at 23.)

- "target site(s)" has a meaning that is readily understandable and, therefore, construction is not necessary.  (Id. at 25.)

4

- "discrete" is properly construed as "distinct; separate."  (Id. at 30.)

- "contiguous amount" is properly construed as "a quantity, the entirety of which is touching."  (Id. at 36.)

- "cleanliness result" is properly construed as "an analysis of a collection of cleanliness data for a given environment indicating quality and/or extent of cleaning efforts."  (Id. at 42.)

- "resists dry abrasion" is properly construed as "not readily removed through casual contact without the use of a liquid."  (Id. at 44.)

- "colorless" is properly construed as "not distinguishable in hue from a surface to which it is applied."  (Id. at 46.)

## C.      Summary Judgment

The parties subsequently filed cross-motions for summary judgment.  Relevant to the present matter, Defendant sought summary judgment as to non-infringement on the grounds that the VeriClean Sprayer cannot apply a "contiguous amount" of transparent indicator material to a "target site" on an environmental surface, as required by the '453 Patent, or an amount of transparent indicator material to a "discrete target site" on an environmental surface, as required by the '395 Patent.  (SJ Order at 16–17.)  However, as summarized below, the Court found that there are genuine issues of material fact as to whether the VeriClean Sprayer meets these claim limitations, thereby precluding summary judgment. (Id. at 17.)

### 1.      "Contiguous amount"

First, Defendant argued that the claim limitation "contiguous amount" refers to the entire amount of transparent indicator material applied, and that it is undisputed that the

VeriClean Sprayer cannot apply an amount of transparent indicator material, the entirety of which is touching, in one application.  (Id.)  Defendant asserted that its position is supported by the plain language of the claims, the specification and file history, the Court's claim construction, and Federal Circuit precedent.  (Id.)  Plaintiffs, on the other hand, argued that Defendant was improperly reading limitations into the claims that were not imposed by the Court's claim construction.  (Id.)  According to Plaintiffs, each of the claims that includes the "contiguous amount" limitation uses the "comprising" transition before setting forth the limitations, indicating that those claims cover "an accused method that results in application of 'a quantity [of transparent indicator material], the entirety of which is touching,' even if the method also results in application of additional quantities of material that are not touching."  (Id.)  Plaintiffs argued that it is undisputed that the VeriClean Sprayer applies a pattern of material that includes an amount, the entirety of which is touching, and, accordingly, a reasonable jury could find that the sprayer satisfies the "contiguous amount" limitation.  (See id. at 17–18.)

The Court agreed with Plaintiffs, finding that neither the claim language nor the Court's claim construction supports Defendant's interpretation and application of the term "contiguous amount."  (Id. at 18.)  In particular, the Court noted that its construction of the term "contiguous amount" does not state that all of the material applied in one application must be touching, and that the use of the open-ended word "comprising" indicates that the claim is met if "a quantity [of transparent indicator material], the entirety of which is touching," is applied—even if there are additional quantities of material applied that are

6

not touching.  In addition, the Court found that the term "comprising" was not being

improperly used to reach into a particular claim step and alter the meaning of a claim

term because "amount" is not limited by the express claim language to mean "the entire

amount applied" and "amount" was not construed by this Court to mean "the entire

amount applied."  Therefore, because the testing conducted by both Plaintiffs' and

Defendant's experts demonstrated that the VeriClean Sprayer applied a pattern of

transparent indicator material that included an amount, the entirety of which was touching,

the Court concluded that there was sufficient evidence from which a reasonable jury could

find that the VeriClean Sprayer satisfies the "contiguous amount" limitation.

### 2.  "Target site"

Second, Defendant argued that the claims require that the transparent indicator

material be applied only to pre-determined "target sites."  (See id. at 22.)  In opposition,

Plaintiffs argued that neither the claim language nor the Court's claim construction requires

that the target site be pre-selected or that it be of a particular size.  (See id. at 23.)  The Court

agreed with Plaintiffs, finding that the claim language does not explicitly state that the target

site must be at a pre-determined location or be of a particular size, and that the Court's

decision that construction of the term "target site" was unnecessary does not demonstrate

that a target site must be at a pre-selected location or be of a particular size.  (See id. at 24.)

Rather, the Court acknowledged that, in declining to construe the term, "[it] stated only

that a target site is not 'all' or 'nearly all' of a surface, and is not limited to the specific

locations identified in the patent specifications."  (Id. at 24–25 (citing Claim Construction

Order at 25–26).)  Because Plaintiffs presented evidence from which a reasonable jury could conclude that the VeriClean spray can be applied to a surface without covering all or nearly all of that surface, the Court denied summary judgment as to non-infringement of the "target site" limitation.  (See id. at 26.)

### 3.      "Discrete"

Third, Defendant argued that the VeriClean Sprayer does not meet the "discrete target site" limitation because the sprayer cannot apply transparent indicator material only to a "discrete" target site, but rather has a "large and diffuse" spray pattern.  (See id. at 26.)  To support its argument, Defendant pointed to this Court's claim construction, as well as statements made by the applicant during prosecution in which he distinguished the prior art as having a spray coverage that would encompass "all or nearly all" of an object.  (See id. at 26–27.)  In opposition, Plaintiffs argued that neither the claim language nor the Court's claim construction requires that the application of indicator material be of particular dimensions, and that Defendant was improperly attempting to add limitations to the Court's construction of "discrete."  (See id. at 27.)

The Court agreed with Plaintiffs, finding that neither the claim language nor the Court's construction imposed specific dimensions on a "discrete" target site, but only required that the target sites not be touching or overlapping.  (See id. at 27–28.)  Because Plaintiffs presented evidence from which a reasonable jury could conclude that the VeriClean Sprayer can be used to apply spray to target sites that do not overlap, the Court

found that grant summary judgment as to non-infringement of the "discrete target site"

limitation was not warranted.  (See id. at 29–30.)

## III.    DISCUSSION

Plaintiffs now seek to exclude the presentation of certain testimony from

Defendant's expert witnesses.  Federal Rule of Evidence 702 governs the admissibility of

expert testimony.  Under Rule 702:

> A witness who is qualified as an expert by knowledge, skill, experience,
> training, or education may testify in the form of an opinion or otherwise if:
>
> (a)    the expert's scientific, technical, or other specialized knowledge will
> help the trier of fact to understand the evidence or to determine a fact
> in issue;
>
> (b)    the testimony is based on sufficient facts or data;
>
> (c)    the testimony is the product of reliable principles and methods; and
>
> (d)    the expert has reliably applied the principles and methods to the facts
> of the case.

Fed. R. Evid. 702.  Thus, proposed expert testimony must satisfy three prerequisites to be

admitted.  Lauzon v. Senco Prods., Inc., 270 F.3d 681, 686 (8th Cir. 2001).  "First, evidence

based on scientific, technical, or other specialized knowledge must be useful to the finder of

fact in deciding the ultimate issue of fact."  Id.  "Second, the proposed witness must be

qualified to assist the finder of fact."  Id.  "Third, the proposed evidence must be reliable or

trustworthy in an evidentiary sense, so that, if the finder of fact accepts it as true, it provides

the assistance the finder of fact requires."  Id. (citation and internal quotation marks

omitted).  These requirements reflect the Supreme Court's analysis in Daubert v. Merrell

Dow Pharmaceuticals, Inc., in which the Court emphasized the district court's "gatekeeping" obligation to make certain that all testimony admitted under Rule 702 "is not only relevant, but reliable."  509 U.S. 579, 589 (1993).  As the Court noted, "[t]he focus . . . must be solely on principles and methodology, not on the conclusions that they generate." Id. at 595.

Nonetheless, "Rule 702 reflects an attempt to liberalize the rules governing the admission of expert testimony," and it favors admissibility over exclusion.  Lauzon, 270 F.3d at 686 (citation and internal quotation marks omitted).  Doubts regarding the usefulness of an expert's testimony should be resolved in favor of admissibility, United States v. Finch, 630 F.3d 1057, 1062 (8th Cir. 2011), and gaps in an expert witness's qualifications or knowledge generally go to the weight of his testimony and not its admissibility.  Robinson v. GEICO Gen. Ins. Co., 447 F.3d 1096, 1100 (8th Cir. 2006). Likewise, "[a]s a general rule, the factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility, and it is up to the opposing party to examine the factual basis for the opinion in cross-examination."  Finch, 630 F.3d at 1062 (citation and internal quotation marks omitted).  "The exclusion of an expert's opinion is proper only if it is so fundamentally unsupported that it can offer no assistance to the jury."  Wood v. Minn. Mining & Mfg. Co., 112 F.3d 306, 309 (8th Cir. 1997) (citation and internal quotation marks omitted).

Of particular importance to the present matter, expert opinions in patent litigation must be based on the court's claim construction in order to be considered relevant and

reliable and, therefore, admissible.  See Dynetix Design Solutions, Inc. v. Synopsys, Inc.,

No. C11-5973 PSG, 2013 WL 4537838, at *4 (N.D. Cal. Aug. 22, 2013) ("Any expert

testimony must adhere to the court's claim constructions and must not apply alternative

claim constructions."); Hochstein v. Microsoft Corp., No. 04-73071, 2009 WL 2022815, at

*1 (E.D. Mich. July 7, 2009) (granting the plaintiffs' motion to exclude testimony from the

defendant's expert that conflicted with the court's claim construction).  This is because the

question of infringement is resolved by comparing the claim terms—as construed by the

court—to the accused device.  Apex Inc. v. Raritan Computer, Inc., 325 F.3d 1364, 1370

(Fed. Cir. 2003).  Thus, where the court has construed the claim terms at issue, an expert

may not offer his or her own construction of those terms to the jury.  See CytoLogix Corp.

v. Ventana Med. Sys., Inc., 424 F.3d 1168, 1172 (Fed. Cir. 2005) (stating that "[t]he risk of

confusing the jury is high when experts opine on claim construction before the jury").

Likewise, where a court has rejected the claim construction proposed by a party, and left for

the jury the issue of determining the term's plain and ordinary meaning, an expert may not

offer testimony based on the rejected construction.  See Finjan, Inc. v. Secure Computing

Corp., 626 F.3d 1197, 1206–07 (Fed. Cir. 2010) (affirming the district court's exclusion

of expert testimony that imposed a claim limitation specifically rejected by the district

court when it construed the term as having "its plain and ordinary meaning").

## A.    Richard M. Lueptow

During the course of this litigation, both Plaintiffs and Defendant hired experts to test

the spray pattern of the VeriClean Sprayer.  Relevant to this matter, Defendant's expert,

Richard M. Lueptow, tested the VeriClean Sprayer at distances of 6 inches and 2 inches, using a laminate surface, light switch, door handle, telephone, toilet seat, and handrail. (Tsao Decl. [Doc. No. 137], Ex. 1 (Lueptow Report) ¶¶ 51, 57.)  He found that, at both distances, the sprayer created "a large and diffuse" spray pattern, with many "individual droplets."  (Id., Ex. 1 ¶¶ 72, 73, 77, 89, 93–94, 99, 103, 109, 112–13, 118, 122, 127, 130–31.)  However, some "pooling" or "merging" of droplets was present.  (Id., Ex. 1 ¶¶ 76, 93, 103, 109, 112, 121, 130.)  As to Plaintiffs' expert's report, Dr. Lueptow stated:

> [I]t is my opinion that [Plaintiffs' expert's] testing methodology is a poor fit for the issues presented in this litigation.  In any event, [Plaintiffs' expert's] own test results are consistent with my test results in that they show that, when the VeriClean Sprayer is sprayed (at either 6 inches or at 2 inches), the resulting spray pattern has individual spray droplets that are not touching other individual spray droplets.  In other words, the entirety of the quantity applied is not touching, as required by the Court's construction of the term "contiguous amount."

(Id., Ex. 1 ¶ 139 (emphasis added).)  And, in summarizing his own opinion, Dr. Lueptow stated:

> In sum, in none of the 14 individual tests that I conducted with the VeriClean Sprayer was the fluorescent marking solution dispensed such that the entire amount of marking solution applied to a surface was touching.  Instead, in all 14 tests, the VeriClean Sprayer produced a spray pattern that was large and diffuse, made up of hundreds, if not thousands, of individual droplets that did not all touch each other.  [Plaintiffs' expert's] own test results (and testimony regarding his test results) confirm and corroborate my opinions that the VeriClean Sprayer cannot "apply a contiguous amount of transparent indicator material," much less apply a contiguous amount to a target site . . . .

(Id., Ex. 1 ¶ 147 (emphases added).)  At his deposition, Dr. Lueptow confirmed that by the phrase "entire amount," he meant "all of the liquid that came out of the spray bottle upon depressing the sprayer."  (Chad Decl. [Doc. No. 144], Ex. 2 (Lueptow Dep.) 72:19–22.)

Plaintiffs argue that Dr. Lueptow's opinions are based on a construction of the claim term "contiguous amount" that is different than the claim construction rendered by this Court and, therefore, Dr. Lueptow should be precluded from offering those opinions. (Mem. in Supp. of Pls.' Mot. to Preclude Testimony of Def.'s Expert, Richard M. Lueptow [Doc. No. 146] at 1.)  In particular, Plaintiffs assert that Dr. Lueptow's interpretation of "contiguous amount" improperly requires that "the entire amount of liquid released by one pump of the spray bottle" be touching, whereas the Court's construction simply requires that "a quantity" applied be touching, even if other quantities are also applied that are not touching.  (See id.)

Defendant argues that, pursuant to the prosecution history of the Patents-in-Suit and this Court's claim construction, the term "contiguous amount" refers to "the entirety of the amount applied," (see Def.'s Mem. of Law in Opp. to Pls.' Mot. to Preclude Testimony of Def.'s Expert, Richard M. Lueptow [Doc. No. 173] at 2–7), and the Patent's use of the word "comprising" in the preamble does not alter that definition, (see id. at 8–16).  Accordingly, Defendant argues, there is no basis for excluding Dr. Lueptow's opinion because the definition of "contiguous amount" that he used requires "the entirety of the amount applied" to be touching.  (See id. at 1–2, 16.)

The Court agrees with Plaintiffs.  As discussed above, and in greater detail in the Court's Summary Judgment Order, the Court's construction of the term "contiguous amount"—i.e., "a quantity, the entirety of which is touching"—does not explicitly state that all of the material applied in one application must be touching.  Moreover, use of the

open-ended word "comprising" indicates that the claim is met if a quantity of transparent indicator material, the entirety of which is touching, is applied—even if there are additional quantities of material applied that are not touching.  The definition of "contiguous amount" relied upon by Dr. Lueptow is inconsistent with the Court's construction of that term and, therefore, his opinions based on that definition would be unhelpful to the jury.  Accordingly, while Dr. Lueptow may testify at trial about his testing of the VeriClean Sprayer and the results he obtained, he is precluded from offering testimony regarding his conclusions or opinions that are based on his erroneous interpretation of the term "contiguous amount."

### B.    William A. Rutala, Ph.D

Plaintiffs also take issue with the invalidity and infringement opinions offered by Defendant's expert, William A. Rutala, Ph.D, to the extent that they are based on allegedly improper constructions of the claim terms "contiguous amount," "target site," "discrete," and "cleanliness result."

### 1.    "Contiguous amount"

In opining that Defendant does not infringe any of the asserted claims of the '453 Patent, Dr. Rutala stated the following:

> . . . <u>Dr. Lueptow's test results (and the photographs of those results) show that the VeriClean Sprayer does not apply a "contiguous amount" of indicator material.  Specifically, . . . the resulting spray pattern from the VeriClean Sprayer shows that the "entirety" of the "quantity" of indicator material sprayed is not touching</u>.  In all of Dr. Lueptow's test results, there are individual droplets of spray that are not touching other individual droplets of spray that are clearly visible.  Thus, Diversey does not directly or indirectly infringe any of the Asserted Claims of the '453 patent, all of which require

14

> this "contiguous amount" element, which the VeriClean Sprayer does not
> meet.

(Tsao Decl., Ex. 14 (Rutala Rebuttal Report) ¶ 99 (emphasis added).)  Plaintiffs argue that,

like Dr. Lueptow, Dr. Rutala has added a limitation to the term "contiguous amount" that is

not present in the Court's construction—i.e., that the "entire amount of liquid released by

one pump of the spray bottle" be touching.  (Mem. in  Supp. of Pls.' Mot. to Preclude

Testimony of Def.'s Expert, William A. Rutala, Ph.D [Doc. No. 152] ("Pls.' Rutala Mem.")

at 11.)  Therefore, Plaintiffs assert, Dr. Rutala's testimony as to the meaning of "contiguous

amount," and his analyses that are based on that improper construction, should be excluded.

In opposition, Defendant again argues that the prosecution history of the Patents-in-Suit and

this Court's claim construction support its expert's definition of "contiguous amount," and

the Patent's use of the word "comprising" in the preamble does not alter that definition.

(See Def.'s Mem. of Law in Opp. to Pls.' Mot. to Preclude Testimony of Def.'s Expert,

William A. Rutala, Ph.D [Doc. No. 174] ("Def.'s Rutala Opp.") at 1–8.)

       For the same reasons discussed above in regard to Dr. Lueptow, the definition of

"contiguous amount" relied upon by Dr. Rutala is inconsistent with the Court's

construction of that term and, therefore, his opinions based on that definition would be

unhelpful to the jury.  Accordingly, Dr. Rutala is precluded from offering testimony

regarding the meaning of "contiguous amount" and regarding his opinion that the

VeriClean Sprayer does not infringe the '453 Patent to the extent that his opinion is based

on his incorrect definition of "contiguous amount."

2.      "Target site"

After noting in his expert report that the Court declined to construe the claim term

"target site," Dr. Rutala rendered the following opinion:

> It is my opinion that a person of ordinary skill in the art would understand the term "target site" means <u>a distinct, highly localized mark[] or spot[], roughly the size of a dime to a quarter in diameter, disclosed in the patent specification and in Figures 6 and 7 and the phone Figures 10A and 10B</u>.  As the Court noted in its Markman Order, "target site" does not refer to "nearly all" or "all" of an object. . . .

(Tsao Decl., Ex. 14 (Rutala Rebuttal Report) ¶ 57 (emphasis added); <u>see</u> Chad Decl. [Doc.

No. 153], Ex. 1 (Rutala Opening Report) at 10 n.3.)  In addition, Dr. Rutala's non-

infringement claim chart states:

> [A]s [the parties' experts'] test results show, the VeriClean Sprayer applies droplets of solution in <u>a large spray pattern, covering most or all of many typical high touch objects</u> in a hospital room, and the spray droplets leaving the nozzle are <u>not capable of being applied in a "contiguous amount" to a "target site</u>," as claimed in the '453 patent and as construed by the Court. . . .

> . . . . Moreover, [Defendant's customer's] testimony regarding the prior use of a sprayer—i.e., that the spray covered the entire toilet handle and areas beyond—confirms that no VeriClean System user meets the "target site[]" limitation.

(<u>Id.</u>, Ex. 1 (Rutala Opening Report) at 116–17 (emphases added).)

Plaintiffs argue that, rather than giving the term "target site" its plain and ordinary

meaning, Dr. Rutala is attempting to provide his own construction that adds an improper

dimensional restriction.  (<u>See</u> Pls.' Rutala Mem. at 4–5.)  Plaintiffs also assert that the Court

specifically rejected Defendant's proposal that "target site" be construed to mean "specific

locations," and that Defendant cannot now get "a second bite at the apple on claim

construction" through its expert.  (<u>Id.</u> at 5.)  In response, Defendant points to Dr. Rutala's discussions of whether the VeriClean Sprayer's spray pattern covers "most or all" of a particular surface and argues that Dr. Rutala was applying the plain and ordinary meaning of "target site" as explained by the Court.  (<u>See</u> Def.'s Rutala Opp. at 19–20.)

As discussed above, and in greater detail in the Court's Summary Judgment Order, neither the claim language nor the Court's decision not to construe "target site" demonstrates that a target site must be of a particular size or at a specific, pre-determined location.  In fact, in rejecting Defendant's proposed construction (i.e., "specific location(s)") as too narrow, this Court specifically stated that the claim term "target site" is <u>not</u> limited to the specific locations identified in the patent specifications.  (<u>See</u> Claim Construction Order at 26.)  As for size, the Court stated only that a target site is not "all" or "nearly all" of a surface.  (<u>See id.</u> at 25–26.)  Dr. Rutala's definition of "target site" (i.e., "a distinct, highly localized mark[] or spot[], roughly the size of a dime to a quarter in diameter, disclosed in the patent specification and in Figures 6 and 7 and the phone Figures 10A and 10B") imposes both a size and location restriction and, therefore, is contrary to the Court's ruling. Accordingly, Dr. Rutala is precluded from offering testimony regarding that definition of "target site" and regarding his opinions that are based on that incorrect definition, because such testimony would not be helpful to a jury.

### 3.    "Discrete"

In regard to the claim term "discrete," Dr. Rutala stated the following in his expert report:

<u>Having reviewed the claims, the specification, and the file history of the '395 patent, it is not clear how the addition of the modifying word "discrete" before the claim phrase "target sites" distinguishes "discrete target sites" from the "target sites" that are disclosed in the specification and figures of the '395 patent, as well as the file history, which all describe "target sites" as being distinct, separate, and highly localized areas or spots on high-touch objects.</u> (See, e.g., '395 patent, Figs. 6, 7, 10A & 10B.)  Dr. Carling testified that he "never thought about the difference" between a discrete target site and a target site, and, "in a general layperson sense," a discrete target site and a target site "would be very similar, if not the same."   (06/20/2014 Deposition of Kleancheck Systems, LLC ("Kleancheck Dep.") at 50:23-51:12, 59:24-60:16.)  <u>My opinion is that a person of ordinary skill in the art would not understand with any reasonable certainty how a "discrete target site" differs from a "target site."</u>  For purposes of this Report, however, I apply the Court's construction of "discrete" (i.e., that the "discrete" target site must be distinct or separate) without attempting to resolve the uncertainty about how a "discrete target site" (as claimed in the '395 patent) differs from the target site (as discussed at length during the prosecution of the '395 patent and as claimed in the '453 patent). . . .

. . . .

In the Markman Order, the Court noted that "the applicant did distinguish his invention from the prior art during prosecution by comparing 'discrete target sites' to . . . 'a rather large surface area.'"  (Memorandum Opinion and Order, Doc. No. 69, at 30.)   As noted above, <u>because the spray pattern on the laminate surface covers "a rather large surface area," the VeriClean Sprayer does not (and cannot) hit a "discrete target site,"</u> as claimed in the Asserted Claims of the '395 patent.

. . . .

. . . As noted above, and as [the parties' experts'] test results show, <u>the VeriClean Sprayer applies droplets of solution in a large spray pattern, covering most or all of many typical high touch objects in a hospital room, and the spray droplets are not capable of being applied to a "discrete target site,"</u> as claimed in the '395 patent and as construed by the Court. . . .

(Tsao Decl., Ex. 14 (Rutala Rebuttal Report) at 72 & ¶¶ 59, 67 (emphases added).)

Plaintiffs argue that Dr. Rutala's questioning of the difference between "discrete target sites" and "target sites" is an impermissible re-hashing of Defendant's indefiniteness argument that was previously rejected by the Court. (Pls.' Rutala Mem. at 6–7.) Plaintiff also argues that Dr. Rutala added dimensional restrictions to the term "discrete" by requiring that it not cover a "large" surface area, in contradiction to the Court's claim construction. (See id. at 7–8; Pls.' Rutala Reply at 6–7.) Defendant, on the other hand, points to Dr. Rutala's references to the Court's discussion during claim construction that the applicant had distinguished his invention from prior art by comparing "discrete target sites" to "a rather large surface area," and argues that Dr. Rutala did apply the Court's construction of "discrete" in rendering his opinion. (See Def.'s Rutala Opp. at 12–15.)

The Court agrees with Plaintiffs. First, because indefiniteness is a question of law for the Court, H-W Tech., L.C. v. Overstock.com, Inc., 758 F.3d 1329, 1332 (Fed. Cir. 2014), Dr. Rutala's testimony regarding the alleged ambiguity is not properly presented to the jury. Moreover, the Court already rejected Defendant's argument that the term "discrete" is indefinite as used in the '395 Patent. (See Claim Construction Order at 28–30.) Second, as discussed above, and in greater detail in the Court's Summary Judgment Order, neither the claim language nor the Court's construction of the term "discrete" to mean "distinct; separate" imposes specific dimensions on a "discrete" target site. Rather, the only requirement is that the sites not be touching or overlapping. Dr. Rutala's opinions that the VeriClean Sprayer cannot hit a "discrete" target site because its spray pattern is "large" or "rather large" adds a dimensional limitation and is, therefore contrary to the Court's claim

construction ruling.  Accordingly, Dr. Rutala is precluded from offering any testimony related to those opinions.

### 4.  "Cleanliness result"

In his expert report, Dr. Rutala stated his belief that inclusion of the word "cleanliness" in the Court's construction of the claim term "cleanliness result" creates ambiguity.  (See Tsao Decl., Ex. 14 (Rutala Rebuttal Report) at 75.)  He, therefore, offered alternate infringement opinions:

> [A] person of ordinary skill in the art would understand the term "cleanliness result" to relate to a measure of the microbial contamination on a surface and not to relate to whether or not a surface has been cleaned.  In its Markman Order, the Court construes "cleanliness result" to mean "an analysis of a collection of <u>cleanliness</u> data for a given environment indicating quality and/or extent of cleaning efforts," but does not define what "cleanliness" refers to.  Because the use of the VeriClean Spray and a black light does not measure the microbial contamination on a surface, this element is not met.  To the extent that the Court's construction of "cleanliness result" is read to mean that "cleanliness" is synonymous with "cleaning," then the "providing a cleanliness result" element is met by VeriClean System users of the iMap software.

(Id. at 75–76 (emphasis in original).)  In other words, as Defendant concedes, "Dr. Rutala fully acknowledged that, if 'cleanliness' were read to be synonymous with 'cleaning,' then the 'cleanliness result' limitation would be met by users of the VeriClean software."  (Def.'s Rutala Opp. at 9.)

Plaintiffs argue that, to the extent that Dr. Rutala's opinion is based on a definition of "cleanliness result" that requires the measurement of microbes, his opinion is inconsistent with the Court's construction and his testimony should be excluded.  (See Pls.' Rutala Mem. at 9–11.)  However, Plaintiffs do not contest Dr. Rutala's opinion, and related testimony,

that the "cleanliness result" element is met if "cleanliness" means "cleaning."  (See Pls.'

Rutala Reply at 8–9.)  For its part, Defendant does not argue that a definition of "cleanliness

result" that requires the measurement of microbes is correct.  (See Def.'s Rutala Opp. at 8–

12.)  Rather, after discussing several portions of Dr. Rutala's report in which he opined that

the "cleanliness result" limitation is met if "cleanliness" is synonymous with "cleaning,"

Defendant states that "Dr. Rutala applied this Court's construction of 'cleanliness result'—

subject to his uncertainty about the meaning of the word 'cleanliness.'"  (Id. at 12.)

There appears to be no dispute among the parties that the Court's construction of

"cleanliness result"—i.e., "an analysis of a collection of cleanliness data for a given

environment indicating quality and/or extent of cleaning efforts"—does not involve a

determination of the number of microbes on a surface.  Nor should there be.  In rejecting

Defendant's proposal that "cleanliness result" should be construed to mean a

"'measurement of how clean a surface is, in terms of microbes on the surface,'" (Claim

Construction Order at 36), this Court stated that:  (1) "the language of the claims

themselves indicates that a cleanliness result does not involve a determination of the

number of microbes on a surface, but rather refers to determinations of whether the

transparent indicator material has been removed from the target sites," (id. at 39–40);

(2) "while the specifications do not expressly define 'cleanliness result,' neither do they

mention measuring the number of 'microbes' on a surface," (id. at 40); and (3) the

illustrations relied upon by the applicant as supporting the term "cleanliness result" show

the percentage of targets cleaned and make no mention of microbes, (id. at 41).  Therefore,

Dr. Rutala's definition of "cleanliness result" that requires measuring microbes is inconsistent with the Court's construction of that term, and his opinions based on that definition would be unhelpful to the jury. Accordingly, Dr. Rutala is precluded from offering any testimony related to those opinions.

### C.     John C. Jarosz

Plaintiffs' third Motion challenges the admissibility of testimony from Defendant's damages expert, John C. Jarosz, regarding reasonable royalty damages. (Mem. in Supp. of Pls.' Mot. to Preclude Testimony of Def.'s Damages Expert, John C. Jarosz [Doc. No. 158] ("Pls.' Jarosz Mem.") at 1.)  In his report, Mr. Jarosz opined that the appropriate amount of reasonable royalty damages, should Defendant be found liable for infringement, is ███. (Gross Decl. [Doc. No. 175], Ex. 2 (Jarosz Rebuttal Report) at 3.)  He began his analysis by considering a "hypothetical negotiation" between Plaintiffs and Defendant.  (Id., Ex. 2 at 54–60.)  After noting that the launch of the VeriClean Sprayer occurred in March 2012, the first individual VeriClean Sprayer was sold in June 2012, and the first sale of the VeriClean System occurred in December 2012, Mr. Jarosz chose the same "hypothetical negotiation" date as Plaintiffs' expert—"mid-2012."  (See id., Ex. 2 at 57–59.)  Mr. Jarosz next determined that the appropriate form of a reasonable royalty was a "running royalty," as did Plaintiffs' expert.  (See id., Ex. 2 at 77–78.)  However, unlike Plaintiffs' expert, Mr. Jarosz determined that the running royalty should be based on net sales of the VeriClean System rather than a fixed fee per audit.  (See id., Ex. 2 at 78–80.)  Mr. Jarosz then found that the proper royalty base

includes Defendant's net sales revenue only from sales of the VeriClean System to its paying customers, which amounts to ███████. (See id., Ex. 2 at 80–81, 107.)

After determining the form of royalty and royalty base, Mr. Jarosz considered three quantitative methodologies—the Licensing Comparables (or Market) Approach, the Incremental Benefits (or Income) Approach, and the Design-Around (or Cost) Approach—to establish a range of potential royalty rates. (See id., Ex. 2 at 75, 81–96.) As for the Licensing Comparables Approach, Mr. Jarosz examined several agreements, including a license agreement between Plaintiffs for the Patents-in-Suit, a license agreement between Creative Solutions LLC and Plaintiff Kleancheck for the Albert Patent, and a sublicense agreement between Plaintiffs for the Albert Patent. (See id., Ex. 2 at 82–89.) Relevant to the present matter, Mr. Jarosz stated the following regarding the license agreement between Plaintiffs for the Patents-in-Suit:





(Id., Ex. 2 at 82–84 (citations omitted).)  Mr. Jarosz also noted that, although the license

agreement includes lump sum royalty payments, it ███████████████████████████████

████████████████████████████████████████████████████████████████

██████  (Id., Ex. 2 at 90 n.395.)

Based on his quantitative analysis, Mr. Jarosz determined that a proper reasonable

royalty rate is ███████████████████  (Id., Ex. 2 at 96.)  Mr. Jarosz then

considered a number of qualitative factors derived from Georgia-Pacific Corp. v. U.S.

Plywood Corp., 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970), modified and aff'd, 446 F.2d

295 (2d Cir. 1971), that might have an impact on the conclusion reached through his

quantitative analysis.  (See id., Ex. 2 at 75–76, 96–110.)  These factors include:  the

nature and scope of the license resulting from the hypothetical negotiation compared to

the actual licenses, the licensor's policy of not licensing its intellectual property, the

commercial relationship between the parties, the effect of selling the accused product on

the sale of other products, the duration of the patents, the profitability of the accused

device, the nature and advantages of the patented product, the extent of the alleged

infringer's use of the patent and sales of the accused product, the portion of the profit that may be customary to allow for use of the patents, and the portion of the profits that should be credited to the patents.  (See id., Ex. 2 at 96–110.)  He concluded that several of the factors (i.e., the licensor's policy of not licensing its intellectual property, the commercial relationship between the parties, and the effect of selling the accused product on the sale of other products) put "upward pressure on the royalty," and some factors (i.e., the nature and scope of the license and the extent of the infringer's use) put "downward pressure on the royalty," but that "[o]n balance" a rate of ███████ is appropriate.  (Id., Ex. 2 at 111.)  Applying this rate (████████) to Defendant's net sales revenue from sales of the VeriClean System (██████), Mr. Jarosz calculated reasonable royalty damages of ██████.  (See id., Ex. 2 at 111–14 & Tab 16.)

Plaintiffs take issue with two aspects of Mr. Jarosz's opinion.  First, Plaintiffs argue that Mr. Jarosz's methodology is faulty because he applied the wrong law.  (See Pls.' Jarosz Mem. at 9–13.)  Second, Plaintiffs argue that Mr. Jarosz's Licensing Comparables Approach analysis is not reliable.  (See id. at 13–16.)

### 1.    Methodology

In arguing that Mr. Jarosz applied the wrong law, Plaintiffs assert, in particular, that he failed to give appropriate weight to the pre-infringement information that was available.  (See id. at 9–13.)  According to Plaintiffs, although Mr. Jarosz acknowledges that the relevant time frame for assessing a reasonable royalty is when infringement begins, he relies only on Defendant's actual sales performance in conducting his analysis.

(See id. at 9.)  Therefore, Plaintiffs argue, Mr. Jarosz's opinion is based on an improper

after-the-fact assessment and must be excluded.  (See id. at 13.)  Plaintiffs also argue that

Mr. Jarosz's testimony must be excluded because he failed to adequately analyze several

categories of legally-relevant information.  (See Reply Mem. in Supp. of Pls.' Mot. to

Preclude Testimony of Def.'s Damages Expert, John C. Jarosz [Doc. No. 184] ("Pls.'

Jarosz Reply") at 1, 11.)

        In opposition, Defendant argues that Mr. Jarosz considered several pre-

hypothetical negotiation licenses, as well as the various Georgia-Pacific factors discussed

above, in conducting his analysis.  (See Def.'s Mem. of Law in Opp. to Pls.' Mot. to

Preclude the Testimony of John C. Jarosz [Doc. No. 176] ("Def.'s Jarosz Opp.") at 9–10.)

Defendant also contends that there is no authority for Plaintiffs' proposition that expert

testimony may be excluded based on the weight accorded to evidence by the expert.  (See

id. at 10–13.)  Moreover, Defendant asserts, Mr. Jarosz's consideration of post-

hypothetical negotiation information is supported not only by Georgia-Pacific Corp., but

also by longstanding Federal Circuit precedent.  (See id. at 13–17.)

        The Court agrees with Defendant.  First, rather than focusing solely on

Defendant's actual sales performance in determining a reasonable royalty, Mr. Jarosz

analyzed several pre-infringement considerations:  the nature and scope of Plaintiffs'

actual pre-hypothetical negotiation license, Plaintiff Ecolab's policy of not licensing its

intellectual property, and the commercial relationship between the parties.  Second, "[the

Federal Circuit] ha[s] consistently upheld experts' use of a hypothetical negotiation and

Georgia-Pacific factors for estimating a reasonable royalty," i4i Ltd. P'ship v. Microsoft Corp., 598 F.3d 831, 854 (Fed. Cir. 2010), and the Georgia-Pacific factors themselves include several post-hypothetical negotiation considerations (e.g., the effect of selling the accused product on the sale of other products, the profitability of the accused device, and the extent of the alleged infringer's use of the patent and sales of the accused product). See Georgia-Pacific Corp., 318 F. Supp. at 1120; see also Fromson v. W. Litho Plate & Supply Co., 853 F.2d 1568, 1575 (Fed. Cir. 1988) (stating that the hypothetical negotiation methodology is flexible because "it speaks of negotiations as of the time infringement began, yet permits and often requires a court to look to events and facts that occurred thereafter and that could not have been known to or predicted by the hypothesized negotiators"), overruled on other grounds by Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp., 383 F.3d 1337 (Fed. Cir. 2004).  Third, Mr. Jarosz did not simply cursorily recite the fifteen Georgia-Pacific factors, but rather he provided "some explanation of both why and generally to what extent the particular [applicable] factor[s] impact[] the royalty calculation."  Whitserve, LLC v. Computer Packages, Inc., 694 F.3d 10, 31 (Fed. Cir. 2012).

Plaintiffs rely heavily on Interactive Pictures Corp. v. Infinite Pictures, Inc. and Riles v. Shell Exploration & Production Co. for the proposition that post-hypothetical negotiation information "must take a back seat" to evidence of an alleged infringer's expected sales at the time infringement began.  (See Pls.' Mem. at 10–11.)  However, although those cases state that a reasonable royalty rate based on a hypothetical

negotiation must relate to the time the alleged infringement began, neither of those cases

precludes consideration of post-hypothetical negotiation information or requires that a

particular amount of weight be placed on pre- or post-hypothetical negotiation

information.  See Riles v. Shell Exploration & Prod. Co., 298 F.3d 1302, 1313 (Fed. Cir.

2002) (vacating a damages award where the defendant "did not provide any evidence or

testimony to show that [the expert's] models reflected what the parties might have agreed

to, at any time, particularly at the time the infringement began") (emphases added);

Interactive Pictures Corp. v. Infinite Pictures, Inc., 274 F.3d 1371, 1385 (Fed. Cir. 2001)

(stating that "an actual infringer's profit margin can be relevant to the determination of a

royalty rate in a hypothetical negotiation").  Accordingly, Plaintiffs have not

demonstrated that Mr. Jarosz employed a faulty methodology in rendering his opinion.

And, to the extent that Plaintiffs' objections go to the conclusions reached by Mr. Jarosz

in employing that methodology, and the factual bases therefore, such issues go to the

weight that should be accorded Mr. Jarosz's opinion and must be resolved by a jury.

## 2.    Licensing Comparables Approach

Plaintiffs also assert that Mr. Jarosz's Licensing Comparables Approach analysis

is unreliable because it does not take into consideration key terms of the license

agreement between Plaintiffs upon which he relies.  (See Pls.' Jarosz Mem. at 13–16.)  In

particular, Plaintiffs argue that Mr. Jarosz:  (1) relied exclusively on the ███████ running

royalty rate and disregarded the milestone and annual minimum royalty payment terms;

(2) mischaracterizes the scope of Plaintiffs' license; and (3) failed to consider the

difference between the nature of Plaintiffs' relationship with each other and Plaintiffs'
relationship with Defendant.  (See id. at 13–15; Pls.' Jarosz Reply at 8–9.)  Plaintiffs
assert that, ███████████████████████████████████████████████
███████████████████████████████████████████  (Pls.' Jarosz
Mem. at 15.)

On the contrary, Defendant argues, Mr. Jarosz provided a detailed discussion of
Plaintiffs' license agreement, acknowledging both the various payment terms and the
differences between that license agreement and the hypothetical negotiation.  (See Def.'s
Jarosz Opp. at 6–7.)  Moreover, according to Defendant, an opposing party's objections
to an expert's analysis of comparable licenses is not a proper basis for excluding the
expert's testimony.  (See id. at 11–12.)

The Court again agrees with Defendant.  The Federal Circuit recently reiterated in
VirnetX, Inc. v. Cisco Systems, Inc. that, "in attempting to establish a reasonable royalty,
the licenses relied on by the patentee in proving damages [must be] sufficiently
comparable to the hypothetical license at issue in suit," but "identity of circumstances" is
not required.  767 F.3d 1308, 1330 (Fed. Cir. 2014) (citation and internal quotation marks
omitted).  Thus, the court in that case affirmed the district court's decision to allow expert
testimony as to a reasonable royalty rate derived from a comparable licenses analysis
where the licenses related to the patents-in-suit and "all of the other differences that [the
patentee] complain[ed] of were presented to the jury."  Id.  The court concluded that
"though there were undoubtedly differences between the licenses at issue and the

circumstances of the hypothetical negotiation, '[t]he jury was entitled to hear the expert testimony and decide for itself what to accept or reject.'" Id. at 1331 (quoting i4i Ltd. P'ship, 598 F.3d at 856); see also Global Traffic Techs., LLC v. Emtrac Sys., Inc., 946 F. Supp. 2d 884, 912 (D. Minn. 2013) (allowing the plaintiff's damages expert to present testimony as to a reasonable royalty rate where, although the defendants argued that the expert "ignored several 'fundamental licensing terms,'" the expert had considered the Georgia-Pacific factors and any challenges to his analysis and conclusions could be made during cross-examination).

Similarly, here, the license between Plaintiffs that Mr. Jarosz used in his comparable licenses analysis involved the Patents-in-Suit, and Mr. Jarosz did discuss the payment terms and scope and the commercial relationship between the parties.[2]  The fact that Plaintiffs disagree with his analysis and conclusions does not warrant exclusion of his testimony.  Rather, Plaintiffs may challenge Mr. Jarosz's opinion during cross-examination and may present the differences between the actual license and the hypothetical negotiation situation to the jury.  For these reasons, Plaintiffs' Motion is denied as to exclusion of Mr. Jarosz's testimony.

---

[2]    Plaintiffs' reliance on Lucent Technologies, Inc. v. Gateway, Inc., 580 F.3d 1301, 1325–32 (Fed. Cir. 2009), for the proposition that "experts must provide a detailed analysis of any comparable license, including a discussion of the payment structure," does not lead to a different result.  (Pls.' Jarosz Mem. at 13).  First, as discussed above, Mr. Jarosz did discuss the payment structure of the comparable license.  Second, the issue in Lucent was whether the jury's lump-sum damages award was supported by substantial evidence, not whether the expert's testimony should have been excluded.  580 F.3d at 1323–25.

IV.    **ORDER TO SHOW CAUSE**

Various submissions of the parties were filed under seal.  If the parties believe that any portion of this Order warrants redaction, the Court orders the parties to show cause ten days from the date of this Order, stating why the Order should not be unsealed and specifying any portion of the order warranting redaction.

V.     **CONCLUSION**

Based on all the files, records, and proceedings herein, **IT IS HEREBY ORDERED THAT:**

1.    Plaintiffs' Motion to Preclude Testimony of Defendant's Expert, Richard M. Lueptow [Doc. No. 144] is **GRANTED**;

2.    Plaintiffs' Motion to Preclude Testimony of Defendant's Expert, William A. Rutala, Ph.D [Doc. No. 150] is **GRANTED**;

3.    Plaintiffs' Motion to Preclude Testimony of Defendant's Damages Expert, John C. Jarosz [Doc. No. 156] is **DENIED**; and

4.    The parties are ordered to show cause ten days from the date of this Order why the Order should not be unsealed, and to specify any portion warranting redaction.

Dated:  April 28, 2015              s/Susan Richard Nelson
                                    SUSAN RICHARD NELSON
                                    United States District Judge